UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL D. MCCAIN, SR.,

    Plaintiff,

vs.

CHAROLETTE JENKINS, *et al.*,

    Defendants.

Case No. 2:15-cv-1262

District Judge Michael H. Watson
Magistrate Judge Michael J. Newman

---

**REPORT AND RECOMMENDATION[1] THAT: (1) DEFENDANTS' MOTION FOR JUDGMENT ON THE PLEADINGS (DOC. 95) BE GRANTED IN PART AND DENIED IN PART; (2) DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT (DOC. 110) BE GRANTED; (3) PLAINTIFF'S FIRST AMENDMENT RETALIATION CLAIMS AGAINST DEFENDANTS FARRAR AND TROUTE REMAIN PENDING FOR TRIAL; (4) PLAINTIFF'S EIGHTH AMENDMENT CONDITIONS OF CONFINEMENT CLAIM AGAINST DEFENDANT FREE REMAIN PENDING FOR TRIAL; AND (5) THAT PLAINTIFF'S REMAINING CLAIMS BE DISMISSED**

---

This is a civil case in which *pro se* Plaintiff Michael D. McCain, Sr. ("McCain"), an inmate in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"), asserts, *inter alia*, civil rights claims under 42 U.S.C. § 1983. *See* doc. 52. Such claims arise from the alleged conduct of officials and employees at the Chillicothe Correctional Institution ("CCI") during McCain's detention there beginning in early 2014 and until his transfer to the Mansfield Correctional Institution ("MCC") in April 2016. *See* doc. 52.

**I.**

Specifically, McCain's amended complaint consists of forty-one (41) handwritten pages, wherein he asserts a myriad of allegations against twenty-seven named Defendants in 150 lengthy, numbered paragraphs. *See* doc. 52. McCain's allegations stem from his admittedly frequent complaints and grievances against prison officials concerning a variety of issues, including

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

corrections officers' use of allegedly foul language; supposedly unsanitary conditions of confinement (*i.e.*, dust, mold, and pigeon droppings in the prison); interference with his access to the courts; officers' threats of violence; and officers' use of force against him. *Id*. Presently before the Court are two motions filed by Defendants: (1) a motion for judgment on the pleadings (doc. 95); and (2) a partial[2] motion for summary judgment (doc. 110). After lengthy delays and extensions having been granted, McCain has filed a memorandum in opposition to these motions. Doc. 143. Defendants filed a reply. Doc. 144. The undersigned has carefully considered the foregoing, and Defendants' motions are ripe for decision.

A. **Motion for Judgment on the Pleadings Standard**

The standard for reviewing a Rule 12(c) motion for judgment on the pleadings is the same standard employed for reviewing a Rule 12(b)(6) motion to dismiss. *Sensations, Inc. v. City of Grand Rapids*, 526 F.3d 291, 295 (6th Cir. 2008). A motion to dismiss filed pursuant to Fed. R. Civ. P. 12(b)(6) operates to test the sufficiency of the complaint and permits dismissal for "failure to state a claim upon which relief can be granted."

To show grounds for relief, Fed. R. Civ. P. 8(a)(2) requires that the complaint contain a "short and plain statement of the claim showing that the pleader is entitled to relief." While Fed. R. Civ. P. 8 "does not require 'detailed factual allegations' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Pleadings offering mere "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id*. (citing *Twombly*, 550 U.S. at 555). In determining a motion to dismiss, "courts 'are not bound to

---

[2] While captioned as a motion for summary judgment, the undersigned finds, as set forth *infra*, that Defendants' motion for summary judgment does not address all the plausible claims asserted by McCain in his amended complaint. Therefore, the undersigned will refer to the motion for summary judgment as a motion for partial summary judgment.

2

accept as true a legal conclusion couched as a factual allegation.'" *Twombly*, 550 U.S. at 555 (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Further, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id*.

In order "[t]o survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. In addition to well-pleaded allegations in the complaint, the Court may also consider "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint," as well as documents attached to a defendant's motion to dismiss that are important to the plaintiff's claims or if referred to in the complaint. *Amini v. Oberlin College*, 259 F.3d 493, 502 (6th Cir. 2001) (citation omitted); *Composite Tech., L.L.C. v. Inoplast Composites S.A. de C.V.*, 925 F. Supp. 2d 868, 873 (S.D. Ohio 2013).

A claim is plausible where "plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Plausibility "is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged -- but it has not 'show[n]' -- 'that the pleader is entitled to relief.'" *Id*. at 679 (alteration in original) (citing Fed. R. Civ. P. 8(a)(2)).

While *pro se* pleadings are "to be liberally construed" and are "held to less stringent standards than formal pleadings drafted by lawyers," *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), they must still satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). Accordingly, the Court is "not required to conjure up allegations not pleaded or guess at the nature of an argument." *Brown v. Wal-Mart Stores, Inc.*, 507 F. App'x 543, 547 (6th Cir.

2012). In other words, "while [a *pro se*] plaintiff is not required to recite chapter and verse of the statute upon which he relies, he must provide the court and the defendant with sufficient information about the basis for his claim to satisfy federal notice pleading requirements." *Hawkins v. Youngstown Mun. Court*, No. 4:12CV1029, 2012 WL 4050167, at *2 (N.D. Ohio Sept. 13, 2012).

B.  **Summary Judgment Standard**

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment has a shifting burden and "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." *Id*. (citation omitted). Failure

"to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "[i]t is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." *Id*. at 406. In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id*.

## II.

As noted above, the Federal Rules of Civil Procedure require that "[a] pleading that states a claim for relief must contain[,]" *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a). In addition, allegations set forth in a pleading "must be simple, concise, and direct." Fed. R. Civ. P. 8(d)(1). While Rule 8 requires some factual averments to support the claims asserted, courts have construed the requirements of Rule 8 to prohibit a pleading party from "cough[ing] up an unsightly hairball of factual and legal allegations, stepp[ing] to the side, and invit[ing] the defendants and the Court to pick through the mess and determine if plaintiffs may have pleaded a viable claim or two." *Gurman v. Metro Hous. and Redevelopment Auth.*, 842 F.Supp.2d 1151, 1152 (D. Minn. 2011).

In the opinion of the undersigned, McCain's complaint here violates Rule 8 in that it contains no "short and plain statement of the claim[s]" or "simple, concise, and direct" allegations. *See* Fed. R. Civ. P. 8. Instead, the Court and Defendants are largely left to guess as to the specific

5

claims upon which McCain seeks relief. Nevertheless, noting that "appropriate liberal construction requires active interpretation in some cases to construe a pro se" pleading, *Franklin v. Rose*, 765 F.2d 82, 85 (6th Cir. 1985), the undersigned, to the best of his ability -- having spent considerable time reviewing and attempting to comprehend the full scope of the compound, lengthy, and wandering averments alleged -- identifies several potential claims under 42 U.S.C. § 1983, and the undersigned will address those claims *infra*.

McCain also sets forth numerous other allegations of conduct he contends are actionable under § 1983. Doc. 52. Such allegations complain of Defendants' filing of false disciplinary charges against him; a lack of due process in addressing grievances he filed against certain Defendants or with regard to certain prison conditions; Defendants' failure to comply with internal ODRC procedures; and Defendants' use of foul, abusive, or threatening language. *Id.*

Insofar as McCain asserts that Defendants filed false internal disciplinary charges against him, his complaint fails to state a claim.[3] No protected right is implicated in this regard. *See Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003) ("[A] prisoner has no constitutional right to be free from false accusations of misconduct"); *Jones v. McKinney*, No. 97-6424, 1998 WL 940242, at * 1 (6th Cir. Dec. 23, 1998) (finding no constitutional violation against the defendant "even if the disciplinary report was false, because a prisoner has no constitutionally protected immunity from being wrongly accused"); *Person v. Campbell*, No. 98-5638, 1999 WL 454819, at *1 (6th Cir. June 21, 1999) ("[T]he filing of false disciplinary charges against an inmate does not constitute a constitutional violation redressable under § 1983"). Further, McCain presents no allegation or evidence showing he was ever deprived of a liberty interest as a result of disciplinary proceedings. *See Sandin v. Conner*, 515 U.S. 472, 484-87 (1995) ("[D]iscipline in segregated

---

[3] Insofar as McCain asserts that these false charges were made in retaliation for engaging in protected conduct under the First Amended, such claim will be addressed *infra*.

confinement [does] not present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest"; nor does "[t]he chance that a finding of misconduct will alter the balance" of a future parole determination); *Workman v. Wilkinson*, 23 F. App'x 439, 440 (6th Cir. 2001) (finding that administrative control, an increase in security classification, and "transfer to a less desirable facility" do not implicate the Due Process Clause).

McCain also appears to seek recovery under § 1983 on the theory that grievances he filed against certain Defendants or concerning prison conditions were not resolved in his favor, not given the requisite attention he desired, not investigated, or unfairly handled. Such allegations also fail to state a claim because "[p]rison inmates do not have a constitutionally protected right to a grievance procedure." *Miller v. Haines*, No. 97-3416, 1998 WL 476247, at *1 (6th Cir. Aug. 3, 1998). Even wrongful denial of a prisoner's grievance does not subject the decisionmaker to § 1983 liability. *See Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (finding no § 1983 liability based upon a prison official's "denial of [a prisoner's] administrative grievances and [the official's] failure to remedy the alleged retaliatory behavior"); *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001) ("[T]here is no inherent constitutional right to an effective prison grievance procedure"); *Lee v. Mich. Parole Bd.*, 104 F. App'x 490, 493 (6th Cir. 2004) ("Section 1983 liability may not be imposed simply because a defendant denied an administrative grievance or failed to act based upon information contained in a grievance").

Insofar as McCain seeks recovery under § 1983 on the basis that certain Defendants allegedly failed to comply with ODRC procedures, such procedures do not create a liberty interest and, thus, he fails to state a claim in this regard. *McVeigh v. Bartlett*, No. 94-2347, 1995 WL 236687, at *1 (6th Cir. April 21, 1995) ("[F]ailure to comply with a prison policy directive . . . does not rise to the level of a constitutional violation because the policy directive simply does not

7

create a protectible liberty interest"); *cf. Laney v. Farley*, 501 F.3d 577, 581 (6th Cir. 2007) ("[A] § 1983 claim may not be based upon a violation of state procedure that does not violate federal law"); *Smith v. Freland*, 954 F.2d 343, 347 (6th Cir. 1992) ("[P]olicies do not determine constitutional law").

Concerning McCain's allegations that Defendants used foul, abusive, or threatening language, such allegations fail to state a claim upon which relief can be granted. Verbal abuse or harassment by corrections officers, even if reprehensible, do not amount to punishment under the Eighth Amendment and inmates have no constitutional right to be free from such. *Hursey v. Anderson*, No. 16-1146, 2017 WL 3528206, at *4 (6th Cir. Mar. 31, 2017); *Bruederle v. Louisville Metro Gov't*, 687 F.3d 771, 779 (6th Cir. 2012); *Johnson v. Unknown Dellatifa*, 357 F.3d 539, 546 (6th Cir. 2004); *Violett v. Reynolds*, 76 F. App'x 24, 27 (6th Cir. 2003); *Carney v. Craven*, 40 F. App'x 48, 50 (6th Cir. 2002); *Johnson v. Moore*, 7 F. App'x 382, 384 (6th Cir. 2001); *Scott v. Kilchermann*, 230 F.3d 1359 (6th Cir. 2000); *Ivey v. Wilson*, 832 F.2d 950, 955 (6th Cir. 1987).

**III.**

In addition to the foregoing allegations, the undersigned liberally construes McCain's *pro se* complaint to also allege that certain Defendants: (1) retaliated against him for engaging in activity protected by the First Amendment; (2) subjected him to conditions of confinement that amount to cruel and unusual punishment in violation of the Eighth Amendment; (3) subjected him to excessive force in violation of the Eighth Amendment; and (4) denied him access to the courts.

**A.     First Amendment Retaliation**

From the undersigned's perspective, the main claim asserted by McCain is one alleging First Amendment retaliation. A First Amendment retaliation claim requires that a plaintiff show: (1) he or she engaged in conduct protected by the First Amendment; (2) defendant(s) took adverse

8

action against him or her sufficient to "deter a person of ordinary firmness from continuing to engage in that conduct"; and (3) a causal connection between plaintiff's protected conducted and the adverse action, *i.e.*, that "the adverse action was motivated at least in part by the plaintiff's protected conduct." *Maben v. Thelen*, 887 F.3d 252, 262 (6th Cir. 2018), *reh'g denied* (6th Cir. Apr. 19, 2018).

The scope of McCain's claims in this regard, however, is quite broad and difficult to comprehend. Doc. 52. McCain alleges that he was a well-known, serial griever within CCI and that, as a result, Defendants took adverse action against him for his known proclivity in this regard.[4] In the broad sense, McCain generally alleges a far-reaching conspiracy to retaliate against him by all Defendants to ultimately to have him transferred from CCI to another ODRC institution. Such a broad claim, however, must fail because his allegations in this regard are speculative, plead without the requisite specificity required and, ultimately, lack evidentiary support. *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987) ("[C]onspiracy claims must be pled with some degree of specificity and that vague and conclusory allegations unsupported by material facts will not be sufficient to state such a claim under § 1983").

McCain otherwise alleges more specific instances of retaliation by Defendants Farrar and Troute. Defendants, in their motions, do not address McCain's retaliation claims in this regard and, therefore, these claims against Farrar and Troute should remain in this case. *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013) ("[E]ntry of summary judgment on grounds not raised or argued by the parties is 'discourage[d]'").

---

[4] Notably, "[a]busive or manipulative use of a grievance system would not be protected conduct[.]" *Id.* (citing *King v. Zamiara*, 680 F.3d 686, 699 (6th Cir. 2012)). Thus, "an 'inmate cannot immunize himself from adverse administrative action by prison officials merely by filing a grievance or a lawsuit and then claiming that everything that happens to him is retaliatory[.]'" *Id.* (citing *Spies v. Voinovich*, 48 F. App'x 520, 525 (6th Cir. 2002)).

B.     Conditions of Confinement

McCain sets forth several allegations regarding his dissatisfaction with the conditions of his confinement at CCI. Doc. 52. McCain complains of pigeon droppings on windows (PageID 255), thick dust and poor ventilation (PageID 256), mold under a sink (PageID 257), being deprived of use of a restroom for a few hours (PageID 277-79), and being placed in a suicide cell covered in feces and urine for up to four days (PageID 280).

"It is undisputed that the treatment a prisoner receives in prison and the conditions under which he is confined are subject to scrutiny under the Eighth Amendment." *Helling v. McKinney*, 509 U.S. 25, 31 (1993). In other words, "[i]t is cruel and unusual punishment to hold convicted criminals in unsafe conditions.'" *Id*. (citing *Youngberg v. Romeo*, 457 U.S. 307, 315-316 (1982)). "No static 'test' can exist by which courts determine whether conditions of confinement are cruel and unusual, for the Eighth Amendment 'must draw its meaning from the evolving standards of decency that mark the progress of a maturing society.'" *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (citation omitted). To prevail on a claim alleging that the conditions of confinement are cruel and unusual, one must satisfy both an objective and subjective inquiry. *Helling*, 509 U.S. at 35-36.

The objective inquiry requires proof regarding the seriousness of the prisoner's exposure to unreasonably harmful conditions and "the likelihood that such injury to health will actually be caused by exposure." *Id*. at 36. In other words, "[i]n the context of a claim that prison officials failed to protect an inmate from toxic exposure, the inmate must demonstrate either that [he] suffered an actual serious injury to [his] present health or faced a substantial risk of serious harm to [his] future health from involuntary exposure to [the toxin]." *Leonard v. Moore*, No. 2:10-CV-

347, 2012 WL 5830251, at *3 (S.D. Ohio Nov. 16, 2012), *report and recommendation adopted*, No. 2:10-CV-347, 2012 WL 6139001 (S.D. Ohio Dec. 11, 2012) (internal quotations omitted; alterations in original). In addition, the prisoner also "must show that the risk of which he complains is not one that today's society chooses to tolerate." *Helling*, 509 U.S. at 36.

The subjective inquiry requires a prisoner asserting that the conditions of confinement are cruel and unusual to show that prison officials acted with deliberate indifference. *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991). More specifically, "a prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety[.]" *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. Thus, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot . . . be condemned as the infliction of punishment." *Id*. at 838.

Here, McCain presents no evidence that the presence of pigeon droppings on windows in his former CCI dorm, dust in the E-2 dorm, lack of ventilation, or purported black mold (seen once when cleaning a sink) were unreasonably harmful conditions. He also presents no evidence that he was actually injured as a result of these alleged conditions, or that he faced a substantial risk of serious harm to his health from any exposure. "Having concluded that plaintiff has not established that he suffers from an actual serious injury or faces a 'substantial risk of serious harm' to his future health, it follows that he cannot establish the subjective component that [D]efendants . . . were aware of such an injury or risk and disregarded it." *Leonard*, 2012 WL 5830251, at *5.

11

Accordingly, the undersigned concludes Defendants' motions should be granted on these Eighth Amendment claims.

The undersigned also finds that McCain fails to state an Eighth Amendment conditions of confinement claim insofar as he alleges that he was temporarily deprived of the use of a restroom for an hour or more during the morning of September 28, 2015. Doc. 52 at PageID 277-79. "[D]eprivation[] of . . . access to the toilet for a 20–hour period, while harsh, [was] not cruel and unusual punishment." *Hartsfield v. Vidor*, 199 F.3d 305, 310 (6th Cir. 1999) (citing *Stephens v. Carter County Jail*, 816 F.2d 682 (6th Cir. 1987)); *see also Holloway v. Reed*, No. 1:09-CV-208, 2009 WL 1044562, at *2 (W.D. Mich. Apr. 17, 2009) ("The one-time denial of Plaintiff's request to use the toilet is insufficient, by itself, to state a claim under the Eighth Amendment").

McCain also alleges that, during a time when he was on a hunger strike, he was placed in a suicide cell that was covered in feces and urine for up to four days. *See* doc.52 at PageID 281-82. While McCain's allegations in this regard sufficiently state a claim, *see McBride v. Deer*, 240 F.3d 1287, 1291-92 (10th Cir. 2001), the only Defendant specifically identified who had knowledge of the conditions was Defendant Free.[5] Defendants do not address McCain's Eighth Amendment claim concerning the condition of the suicide cell other than to argue in the motion for judgment on the pleadings that McCain's exposure to the feces and urine in the suicide cell was only temporary and, thus, he fails to state a claim upon which relief can be granted. *See* doc. 95 at PageID 576. The undersigned concludes that a period of 4 days is not of limited duration, and that McCain sufficiently states a claim in this regard. *See McBride*, 240 F.3d at 1291-92. Defendants do not further address this claim in their motion for summary judgment and, therefore, such claim remains pending.

---

[5] McCain alleges that Pastor Freeman visited him while he was in the suicide cell and was aware of the conditions of the cell. *See* doc. 52 at PageID 281. Pastor Freeman is not a defendant in this case.

## C. Excessive Force

Like a conditions of confinement claim, an Eighth Amendment excessive force claim "has both an objective and a subjective component." *Richmond v. Settles*, 450 F. App'x 448, 453 (6th Cir. 2011). "[T]he subjective component requires the plaintiff to show that the defendant acted 'maliciously and sadistically for the very purpose of causing harm,' rather than 'in a good faith effort to maintain or restore discipline.'" *Id*. (citing *Hudson v. McMillian*, 503 U.S. 1, 6 (1992); *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). To determine "whether a particular use of force was objectively reasonable[,]" courts consider a number of factors, including "the extent of the injury suffered, the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the prison official, and any efforts made to temper the severity of the forceful response." *Id*.

While an excessive force claim can arise in the absence of significant injury, not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson v. McMillian*, 503 U.S. 1, 9 (1992). As such, "[t]he Eighth Amendments' prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.'" *Id*. at 9-10. "Not every push or shove, even if it may later seem unnecessary in the peace of a judge's chambers, violates a prisoner's constitutional rights[.]" *Id*. at 9. Thus, "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010).

McCain's complaint contains numerous allegations of being cuffed and an allegation that one officer (Defendant Brown) got in his face so close that he "pushed [his] face and his forehead into the side of [McCain's] face." Doc. 52 at PageID 263.

13

He also alleges that, on February 7, 2016, Defendant Lawhorn allegedly "snatched" McCain "violently" causing pain in his neck. *See* doc. 52 at PageID 283. Generally, such allegations are "simply too subjective and vague to state an Eighth Amendment violation[,]" *Tuttle v. Carroll Cnty. Det. Ctr.*, 500 F. App'x 480, 482 (6th Cir. 2012) and, certainly, not sufficient to allege force that is "repugnant to the conscience of mankind." *Hudson*, 503 U.S. at 9. On summary judgment, Defendants present evidence that, on February 7, 2016, McCain was being disrespectful to officers, was escorted to segregation by Lawhorn, and that officers saw no use of force by Lawhorn at all. Doc. 110-1. Further, Defendants point to McCain's subsequent medical records revealing no objectively verifiable injury, and note that McCain -- who had a prior history of degenerative disc disease in his neck -- described the pain to feel like "a stiff neck." *See* doc. 110-1. Thus, even assuming, *arguendo*, McCain adequately alleges an Eighth Amendment claim in this regard, the undersigned finds that the evidence of record, viewed in a light most favorable to McCain, fails to show any discernable injury and, thus, fails to sufficiently show that the force used was more than *de minimis*.

McCain further alleges that he was subjected to excessive force on September 28, 2015, when he requested to use the restroom in the closed dorm. Doc. 52 at PageID 277-79. Defendant Troute, who refused to let McCain enter the closed dorm, told him to use the restroom in the CCI gym or library. *Id*. According to McCain, the gym was closed and he was not permitted to go to the library. *Id*. When McCain then threatened to write a complaint about Troute's refusal, Troute cuffed McCain and Defendant DiSantos responded to the scene. *Id*. When McCain allegedly pleaded with DiSantos to use the restroom, DiSantos purportedly told McCain to urinate on himself. *Id*. McCain then alleges that he was "slammed through [a] door and up against [a] wall face first." *Id*. at PageID 279. Again, such allegations are "simply too subjective and vague to

14

state an Eighth Amendment violation." *Tuttle v. Carroll Cnty. Det. Ctr.*, 500 F. App'x 480, 482 (6th Cir. 2012). Even assuming, *arguendo*, McCain sufficiently alleges an excessive force claim in this regard, he presents no medical evidence showing any discernable injury, and the record otherwise fails to show that the force used on September 28, 2015 was more than *de minimis*.

### D. Access to the Courts

Finally, McCain alleges that certain Defendants interfered with his right to access the courts while on disciplinary control and local control in CCI between March 5, 2015 to April 23, 2015. Doc. 52 at PageID 265. McCain alleges that, during this time, he was not given access to a notary or permitted to copy his proposed submissions so that he could seek discretionary review in the Supreme Court of Ohio. Doc. 52 at PageID 265. As a result of Defendants' failure to provide him with a notary or copies, McCain alleges that he missed his deadline for seeking a discretionary appeal in the Supreme Court of Ohio, and that his request for a delayed appeal was denied. *See State v. McCain*, 34 N.E.3d 929 (Ohio 2015). He now seeks damages as a result of Defendants' alleged interference with his right to access the courts.[6] *See* doc. 52.

"It is well established that prisoners have a constitutional right of access to the courts." *Thaddeus-X v. Blatter*, 175 F.3d 378, 391 (6th Cir. 1999). This right prohibits "state prison officials from actively interfering with inmates' attempts to prepare legal documents . . . or file them[,]" *Lewis v. Casey*, 518 U.S. 343, 350 (1996), and "extends to direct appeals, habeas corpus applications, and civil rights claims only." *Thaddeus-X*, 175 F.3d at 391. To prevail, an inmate must show actual injury, *i.e.*, "that a nonfrivolous legal claim had been frustrated or was being impeded." *Lewis*, 518 U.S. at 353. The prisoner must also show that "more than mere negligence by the state actor caused the injury." *Sims v. Landrum*, 170 F. App'x 954, 956 (6th Cir. 2006).

---

[6] Given that McCain is no longer an inmate at CCI and that the alleged injury has already been incurred, is does not appear that injunctive or any other prospective relief would be appropriate.

15

In this case, the underlying legal proceedings Defendants allegedly interfered with concern McCain's appeal "from the decision of the Montgomery County Court of Common Pleas overruling his post-sentence motion to withdraw [his] guilty plea,"[7] a decision that was affirmed by the Ohio Second District Court of Appeals on February 6, 2015.[8] *McCain*, 2015 WL 502301, at *1. To prevail on his §1983 claim in this Court, McCain must demonstrate that "he should have been able to withdraw his plea[,]" a showing that "necessarily would implicate the validity of the judgment of conviction that he incurred on account of that guilty plea." *Burd v. Sessler*, 702 F.3d 429, 435 (7th Cir. 2012). The Supreme Court's decision in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994), "blocks a state prisoner's § 1983 claim if its success 'would necessarily imply the invalidity of his conviction or sentence.'" *Sampson v. Garrett*, 917 F.3d 880, 881 (6th Cir. 2019) (citing *Burd*, 702 F.3d at 434-35, with approval). Accordingly, Defendants' motions should be granted on McCain's § 1983 access to the courts claim.

## IV.

For the foregoing reasons, the undersigned **RECOMMENDS** that: (1) Defendants' motion for judgment on the pleadings (doc. 95) be **GRANTED IN PART** and **DENIED IN PART**; (2) Defendants' motion for partial summary judgment (doc. 110) be **GRANTED**; (3) Plaintiff's First

---

[7] The guilty plea at issue was entered by McCain on September 29, 2004 to charges of felony murder and aggravated robbery. *State v. McCain*, No. 26356, 2015 WL 502301, at *1 (Ohio Ct. App. Feb. 6, 2015). McCain was subsequently sentenced "to fifteen years to life in prison for felony murder and seven years in prison for aggravated robbery[,]" with those sentences to run concurrently. *Id*. "McCain did not file a direct appeal from his conviction and sentence" and, instead, waited nine years to file with the trial court "various motions and accompanying documents requesting the court to set aside his conviction and stay his sentence" -- motions for post-conviction relief that were denied as untimely. *Id*.

[8] On February 23, 2015, McCain moved the Second District Court of Appeals to reconsider its decision, a motion that was denied on March 19, 2015. *See State v. McCain*, No. 26356, (Ohio Ct. App., Mar. 19, 2015). From the Court's calculation, McCain's notice of appeal seeking discretionary review by the Supreme Court of Ohio was due on or before May 4, 2015 -- 11 days after McCain's purported release from local control. *See* Ohio S. Ct. Prac. R. 7.01(A)(5) ("If a timely application for reconsideration is filed in the court of appeals, and the appellant seeks to appeal from the court of appeals' entry of judgment, the appellant shall file a notice of appeal within forty-five days of the court of appeals' decision denying the application for reconsideration").

Amendment retaliation claims against Defendants Farrar and Troute remain pending; (4) Plaintiff's Eighth Amendment conditions of confinement claim against Defendant Free remains pending; and (5) that Plaintiff's remaining claims be **DISMISSED**.


Date:  August 1, 2019                    s/ Michael J. Newman
                                         Michael J. Newman
                                         United States Magistrate Judge

# **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation. This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d). Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections. If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof. As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system. If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).