UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

MICHAEL D. MCCAIN, SR.,

    Plaintiff,

vs.

CHAROLETTE JENKINS, *et al*.,

    Defendants.

Case No. 2:15-cv-1262

District Judge Michael H. Watson
Magistrate Judge Michael J. Newman

___

**REPORT AND RECOMMENDATION[1] THAT THE SECOND MOTION FOR SUMMARY JUDGMENT FILED BY DEFENDANTS FARRAR AND TROUTE BE: (1) GRANTED IN PART ON TWO OF SEVERAL CLAIMS ASSERTED AGAINST DEFENDANT FARRAR; AND (2) DENIED IN ALL OTHER RESPECTS (DOC. 163)**

\*\*\*

**ORDER DENYING PLAINTIFF'S MOTION FOR LEAVE TO FILE A SURREPLY (DOC. 172)**
___

    This is a civil case in which *pro se* Plaintiff Michael D. McCain, Sr. ("McCain"), an inmate in the custody of the Ohio Department of Rehabilitation and Correction ("ODRC"), asserts, *inter alia*, civil rights claims under 42 U.S.C. § 1983. *See* doc. 52. Such claims arise from the alleged conduct of officials and employees at the Chillicothe Correctional Institution ("CCI") during McCain's detention there beginning in early 2014 and until his transfer to the Mansfield Correctional Institution ("MCC") in April 2016. *See* doc. 52.

    Plaintiff commenced this action on April 13, 2015 and ultimately filed an amended complaint on February 13, 2017. *See* docs. 1, 52. As previously noted by the undersigned, Plaintiff's amended complaint consists of forty-one (41) handwritten pages with lengthy and repetitive factual averments, no clear identification of all legal claims asserted, and no distinct

___

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

delineation of which alleged facts support which purported claims.[2] *See* docs. 52, 148. The undersigned, after liberally construing the *pro se* amended complaint as required, identified potential claims asserted pursuant to § 1983, the following of which survived Defendants' previously filed dispositive motions: (1) First Amendment retaliation claims against Defendants Farrar and Troute; and (2) an Eighth Amendment claim against Defendant Free. Doc. 160.

Following disposition of Defendants' initial dispositive motions, the Court – noting that Defendants' counsel overlooked the First Amendment retaliation claims set forth in Plaintiff's poorly drafted, lengthy complaint – granted Defendants Farrar and Troute leave to file a second summary judgment motion on the First Amendment retaliation claims asserted against them. *Id*. at PageID 1533. That motion is now before the Court. Doc. 163. Plaintiff filed a memorandum in opposition to Defendants' motion (doc. 170) and, thereafter, Defendants filed a reply (doc. 171). Plaintiff filed a motion for leave to file a surreply (doc. 172), which the undersigned **DENIES**. Having carefully considered the foregoing filings that are properly before the Court, Defendants' second motion for summary judgment is ripe for decision.

## I.

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact and that the movant is entitled to summary judgment as a matter of law. Fed. R. Civ. P. 56; *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). "Summary judgment is only appropriate 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no

---

[2] From the undersigned's perspective, Plaintiff's complaint is the epitome of "cough[ing] up an unsightly hairball of factual and legal allegations, stepp[ing] to the side, and invit[ing] the defendants and the Court to pick through the mess and determine if plaintiffs may have pleaded a viable claim or two." *Gurman v. Metro Hous. and Redevelopment Auth.*, 842 F.Supp.2d 1151, 1152 (D. Minn. 2011).

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Keweenaw Bay Indian Comm. v. Rising*, 477 F.3d 881, 886 (6th Cir. 2007) (quoting Fed. R. Civ. P. 56(c)). "Weighing of the evidence or making credibility determinations are prohibited at summary judgment -- rather, all facts must be viewed in the light most favorable to the non-moving party." *Id*.

Once "a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading[.]" *Viergutz v. Lucent Techs., Inc.*, 375 F. App'x 482, 485 (6th Cir. 2010) (citation omitted). Instead, the party opposing summary judgment has a shifting burden and "must -- by affidavits or as otherwise provided in this rule -- set out specific facts showing a genuine issue for trial." *Id*. (citation omitted). Failure "to properly address another party's assertion of fact as required by Rule 56(c)" could result in the Court "consider[ing] the fact undisputed for purposes of the motion." Fed. R. Civ. P. 56(e)(2).

Finally, "there is no duty imposed upon the trial court to 'search the entire record to establish that it is bereft of a genuine issue of material fact.'" *Guarino v. Brookfield Twp. Trustees*, 980 F.2d 399, 404 (6th Cir. 1992) (citations omitted). Instead, "[i]t is the attorneys, not the judges, who have interviewed the witnesses and handled the physical exhibits; it is the attorneys, not the judges, who have been present at the depositions; and it is the attorneys, not the judges, who have a professional and financial stake in case outcome." *Id*. at 406. In other words, "the free-ranging search for supporting facts is a task for which attorneys in the case are equipped and for which courts generally are not." *Id*.

## II.

As previously noted by the undersigned, the claims at issue in Defendants' second motion for summary judgment concern Plaintiff's allegations that Defendants Farrar and Troute retaliated against him for engaging in conduct protected by the First Amendment – namely, his having made

3

oral and/or written grievances against them.  To prevail on his First Amendment retaliation claim, Plaintiff must show that: (1) he engaged in protected conduct; (2) suffered an adverse action that "would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) there is a causal connection between elements one and two – that is, the adverse action was motivated at least in part by the plaintiff's protected conduct."  *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999)).

With regard to the first element, prison inmates have a protected First Amendment "right to file grievances against prison officials on his own behalf."  *Maben v. Thelen*, 887 F.3d 252, 264 (6th Cir. 2018).  This right applies to grievances whether made in writing or made orally.  *Id*. at 265.  However, the First Amendment protects only the filing of non-frivolous grievances.  *Herron v. Harrison*, 203 F.3d 410, 415 (6th Cir. 2000) (citing *Lewis v. Casey*, 518 U.S. 343, 353 (1996) ("Depriving someone of a frivolous claim . . . deprives him of nothing at all, except perhaps the punishment of Federal Rule of Civil Procedure 11 sanctions").

Notably, Plaintiff's lack of success on the merits of the underlying grievance does not, in and of itself, render the grievance frivolous.  *See Bell v. Johnson*, 308 F.3d 594, 607 (6th Cir. 2002).  Further, the underlying grievance need not complain of unconstitutional conduct for First Amendment protection to attach to the act of grieving.  *See Hill v. Lappin*, 630 F.3d 468, 473 (6th Cir. 2010) ("Even though a prisoner has no inherent constitutional right to avoid segregated housing or prison transfers, the BOP may not place the prisoner in segregated housing or transfer him to another prison as a means of retaliating against him for exercising his First Amendment rights").

Concerning the second element, "[i]t is well established that government actions, which standing alone do not violate the Constitution, may nonetheless be constitutional torts if motivated in substantial part by a desire to punish an individual for exercise of a constitutional right."

4

*Thaddeus-X*, 175 F.3d 378 at 386; *see also Bell*, 308 F.3d at 609 ("[A] retaliation claim may lie, even when the allegedly retaliatory conduct itself would not be actionable if taken for nonretaliatory reasons"). "[T]he adverseness inquiry is an objective one, and does not depend upon how the particular plaintiff reacted." *Bell*, 308 F.3d at 606 ("[T]here is no requirement that the plaintiff show actual deterrence").

Ultimately, the question of "whether a retaliatory action is sufficiently severe to deter a person of ordinary firmness is a question of fact." *Kennedy v. Bonevelle*, 413 F. App'x 836, 839 (6th Cir. 2011) (citing *Bell*, 308 F.3d at 603). Thus, "in most cases, the question of whether an alleged retaliatory action poses a sufficient deterrent threat to be actionable will not be amenable to resolution as a matter of law." *Bell*, 308 F.3d at 603; *see also Siggers-El v. Barlow*, 412 F.3d 693, 701 (6th Cir. 2005) ("[I]f a reasonable trier of fact could conclude that a retaliatory act would deter a person from exercising his rights, then the act may not be dismissed at the summary judgment stage").

The third and final element of a First Amendment retaliation claim requires Plaintiff to prove that "the adverse action was motivated at least in part by [his] protected conduct[,]" *i.e.*, that the defendant's "subjective motivation for taking the adverse action was at least in part to retaliate against the prisoner for engaging in protected conduct." *Hill*, 630 F.3d at 475. "[B]ecause of the difficulty in producing direct evidence of an official's retaliatory motive, circumstantial evidence" – such as temporal proximity – can assist in showing a causal connection. *Id*. However, "temporal proximity alone is rarely, if ever, sufficient to establish causation." *Sensabaugh v. Halliburton*, 937 F.3d 621, 630 (6th Cir. 2019).

"Once the plaintiff has met his burden of establishing that his protected conduct was a motivating factor behind any harm, the burden of production shifts to the defendant" to show that he or she "would have taken the same action in the absence of the protected activity[.]" *Thaddeus-*

5

*X*, 175 F.3d at 399. If a defendant meets his or her burden of production in this regard, he or she "is entitled to prevail on summary judgment." *Id*.

### A. Defendant Farrar

The undersigned first addresses the claims asserted against, and the summary judgment arguments advanced by, Defendant Farrar. Although the allegations made in a pleading are generally not "evidence" that can be relied upon in a genuine dispute of material fact on summary judgment, *see Valerio v. Dahlberg*, 716 F. Supp. 1031, 1034 (S.D. Ohio 1988), the undersigned finds it appropriate to review Plaintiff's allegations while also addressing whether the Rule 56 evidence of record – which includes the affidavits submitted by Plaintiff in this case (*see* doc. 52 at PageID 295; doc. 143-1 at PageID 1361-1432) – create genuine issue of material fact.

#### 1. October 2014

The first alleged interaction between Plaintiff and Farrar occurred on October 22, 2014 when Plaintiff was attempting to enter the prison cafeteria. Doc. 52 at PageID 255. When scanning his identification card to enter the cafeteria, the scanner beeped twice, apparently indicating to Farrar that Plaintiff had already eaten. *Id*. Plaintiff contends that he had not eaten yet and that there was a glitch in the scanning system that caused the double-beep. *Id*. Farrar yelled at Plaintiff, "give me your f*cking ID." *Id*. Plaintiff was offended by Farrar's language. *Id*. Plaintiff allegedly responded by telling Farrar that he had no right to swear at him, and accused Farrar of "not watching out." *Id*. Farrar subsequently wrote a disciplinary conduct report against Plaintiff for being disrespectful. *Id*. Plaintiff apparently contends that Farrar retaliated against him for complaining about Farrar's use of foul language. *Id*.

Farrar argues that summary judgment on this alleged instance of retaliation should be granted because the threatened grievance complaining about his alleged use of foul language is

6

frivolous and, therefore, does not amount to protected conduct. Doc. 163 at PageID 1542. Unfortunately, Farrar cites no legal authority in support of his contention in this regard.

However, the undersigned, having independently reviewed the relevant caselaw within the Sixth Circuit, agrees with Farrar on this point. A retaliation claim cannot stand where the alleged protected conduct involves the filing or threatened filing of a grievance against an officer for verbal abuse. *Scott v. Kilchermann*, 230 F.3d 1359 (6th Cir. 2000). Accordingly, summary judgment is appropriate on this claim.

### 2. January 16, 2015

In December 2014, Plaintiff moved to Dorm E-2 of the prison where Farrar was allegedly the supervising officer. *Id.* Soon after arriving in Dorm E-2, Plaintiff believed the air quality and ventilation in the dorm to be subpar and approached Farrar on December 30, 2014 to request a form so that he could submit a grievance. *Id.* at PageID 256-57. Farrar gave Plaintiff the form but allegedly said to Plaintiff, "watch yourself!" *Id.* at PageID 257. While Plaintiff alleges in his amended complaint that Farrar made this statement, *see id.*, he presents no affidavit or other Rule 56 evidence in support of that allegation.

Two weeks later, on January 16, 2015, Plaintiff alleges that Farrar came to his cell and tossed hygiene products on the floor, some of which purportedly landed on a brush used to scrub the toilet. *Id.* While Plaintiff suggests that Farrar's conduct in this regard was in retaliation for filing a grievance about the air quality and ventilation in the prison, the only circumstantial evidence supporting a causal connection between the grievance and Farrar's tossing of Plaintiff's hygiene products on the floor is temporal proximity, which alone is insufficient to support a retaliation claim. While, as noted above, Plaintiff alleges that Farrar told him to "watch [him]self" when he requested the grievance form to complain about the air quality, his affidavit omits testimony regarding this statement by Farrar. Thus, the undersigned concludes that there is no

7

genuine issue of material fact remaining, and that summary judgment is appropriate in Farrar's favor insofar as Plaintiff alleges that Farrar's tossing of Plaintiff's hygiene products was causally connected to complaining about the air quality and ventilation at the prison.

Plaintiff does, however, further allege that Farrar became angry when Plaintiff complained of Farrar's conduct in front of Farrar's superior officer. *Id*. at PageID 256-57. Subsequently, Farrar confronted Plaintiff stating, "you f*cking put me out in front of my superior officer" and threatened to move Plaintiff to a separate unit of the prison. *Id*. at PageID 257. Farrar also filed a disciplinary conduct report against Plaintiff for disrespect. *Id*.

Plaintiff contends that Farrar's threat to move him to a different unit, and the filing of the disciplinary report, were in retaliation for complaining about Farrar's conduct in front of the superior officer. Doc. 52 at PageID 257. In moving for summary judgment, Farrar's sole argument on this claim of retaliation is that "'calling out Defendant Farrar [in front of Farrar's superior officer] is not constitutionally protected conduct." Doc. 163 at PageID 1542. Farrar, however, cites no legal authority in support of this contention, and the undersigned concludes that – in the absence of more developed arguments by Farrar with supporting caselaw (as required by Rule 56 and the Southern District of Ohio Local Rules) – Plaintiff was engaged in protected conduct when complaining to Farrar's superior officer about Farrar's tossing of his hygiene products on the floor of his cell. Summary judgment on this claim should be denied.

      **3.**     **January 26, 2015**

The next event occurred on January 26, 2015, when Plaintiff alleges that he found mold while mopping near a sink in his dorm. *Id*. at PageID 257. Farrar was among the officers who allegedly laughed and joked about the mold, did not appear to take Plaintiff's complaint seriously, and threatened to lock Plaintiff up for his disruptive behavior. *Id*. at PageID 257-59. Ultimately,

8

another corrections officer placed Plaintiff in segregation because of his purportedly disruptive behavior and wrote a conduct report against Plaintiff. *Id*.

Plaintiff testifies that, after being locked up, Farrar took away his job as a porter in retaliation for his complaint about mold and his additional complaints about the way prison staff handled the mold clean-up. *Id*. at PageID 259. There appears to be no dispute that Plaintiff complained about the presence of mold in the dorm and, from the undersigned's perspective, making such a complaint about the conditions of his confinement amounts to engaging in protected conduct. Farrar does not dispute Plaintiff's testimony that, within days of Plaintiff's complaint about mold, he took away Plaintiff's job as a porter. Doc. 52 at PageID 259. While Farrar does argue that "the adverse actions taken against Plaintiff were the result of his irate and disruptive behavior," he cites no evidence of record in support of his contention. *See* doc. 163 at PageID 1543. Regardless, because "loss of a prison job can constitute an adverse action for retaliation purposes," *Walton v. Gray*, 695 F. App'x 144, 146 (6th Cir. 2017), absent developed argument that no casual connection exists between Plaintiff's complaint and the loss of his porter job, the undersigned concludes that Plaintiffs retaliation claim in this regard should survive summary judgment and proceed to trial.

### 4. February 7, 2015

When Plaintiff returned from segregation on February 7, 2015, Farrar allegedly spoke to Plaintiff in his office and told Plaintiff that, "if we have any words about anything, I don't care what, you challenge my authority about anything, for any reason, I'm going to lock your ass up!" *Id*. at PageID 260. Plaintiff viewed Farrar's statement as a threat made in retaliation for having previously submitted grievances against Farrar. *Id*. at PageID 260-61.

On February 27, 2015, the library supervisor at the prison wrote a disciplinary conduct report against Plaintiff accusing him of cursing at a teacher in the prison. *Id*. at PageID 261. When

9

Farrar confronted Plaintiff regarding the conduct report, Plaintiff demanded that another corrections officer hear and address the issue because Plaintiff had a grievance pending against Farrar regarding the February 7, 2015 encounter, and Plaintiff felt that Farrar could not be fair in adjudicating the conduct report. *Id*. at PageID 261-62.

Farrar then allegedly cuffed Plaintiff; escorted him to segregation; told him that, "I told you I was going to get you, I keep my promises"; and threated him by saying, "if you come back out, I'm going to have you f*cked up!" *Id*. at PageID 262. Farrar then left Plaintiff to speak with Officer Brown and returned to take Plaintiff to Officer Brown's office. *Id*. It appears Plaintiff was then placed in segregation and Farrar wrote another disciplinary conduct report against Plaintiff accusing him of being loud and disruptive. *Id*. at PageID 263-64. Plaintiff claims he sought protective custody as a result of Farrar's threats to have him "f*cked up." *Id*. at PageID 265-69.

In his motion for summary judgment, Farrar does not address Plaintiff's retaliation claim as it relates to Farrar's purported retaliatory conduct commencing on February 7, 2015. *See* doc. 163 at PageID 1542-44. Accordingly, the undersigned declines to, *sua sponte*, address Plaintiff's retaliation claims against Farrar as they concern conduct occurring on February 7, 2014 and thereafter. *Smith v. Perkins Bd. of Educ.*, 708 F.3d 821, 829 (6th Cir. 2013) ("[E]ntry of summary judgment on grounds not raised or argued by the parties is 'discourage[d]'"). Instead, such claims should remain pending for trial.

    B.    Troute

Sometime prior to September 7, 2015, Plaintiff moved to Dorm D-1 at CCI, which allegedly fell under the supervision of Defendant Troute. Again, in addressing Troute's summary judgment arguments, the undersigned finds it appropriate to review Plaintiff's allegations as set forth in his amended complaint while also addressing whether the Rule 56 evidence of record – *see* doc. 52 at PageID 295; doc. 143-1 at PageID 1361-1432 – create a genuine issue of fact.

10

### 1. September 7-15, 2015

With regard to Plaintiff's retaliation claim against Troute, Plaintiff alleges that he filed a grievance against Troute on September 7, 2015 because Troute took legal documents from his bunk. Doc. 52 at PageID 272. Thereafter, Plaintiff contends that, on September 15, 2015, when he asked Troute for a grievance form for taking a container from his cell, Troute "placed his hand on his mace," thus threatening Plaintiff with the use of force. *Id*. at 276. While placing his hand on his mace, Troute purportedly stated, "so you're going to write me up?" *Id*. at PageID 276. Thus, Plaintiff's first claim of retaliation against Troute appears to be the assertion that Troute threatened to mace him for requesting a grievance form. *Id*.

In moving for summary judgment, Troute argues that Plaintiff's retaliation claim in this regard "is not supported by any evidence" and that, because Plaintiff was undeterred by the alleged retaliatory conduct because he, nevertheless, filed the grievance. Doc. 163 at PageID 1540. Troute's contention regarding the lack of evidence is not accurate because Plaintiff's factual allegations are not only asserted in his complaint, but also supported by his own affidavits.[3] *See* doc. 52 at PageID 299; doc. 143-1 at PageID 1414. In addition, the factual allegations are somewhat corroborated, in part, by the declaration of inmate William Nelson, who testified that he witnessed Troute "shake down" Plaintiff's cell and threaten Plaintiff with mace. Doc. 170-2 at PageID 1614. Troute's contention - that Plaintiff cannot show an adverse action because he was

---

[3] In their reply memorandum, Defendants both assert that Plaintiff's affidavits are self-serving and, therefore, insufficient to create a genuine issue of material fact. While "[s]elf-serving affidavits, alone are not enough to create an issue of fact" where the affidavits are not based on personal knowledge, *cf. Wolfe v. Vill. of Brice*, 37 F. Supp.2d 1021, 1026 (1999), the Sixth Circuit has concluded that "a plaintiff's testimony is itself sufficient to create a genuine issue of material fact." *Moran v. Al Basit LLC*, 788 F.3d 201, 206 (6th Cir. 2015) (citing *Harris v. J.B. Robinson Jewelers*, 627 F.3d 235, 239 (6th Cir. 2010) (rejecting the argument that a plaintiff's "self-serving" testimony "should not be considered by the court" on summary judgment because "[a] court may not disregard evidence merely because it serves the interests of the party introducing it"); *see also Rayfield v. Am. Reliable Ins. Co.*, 641 F. App'x 533, 540 (6th Cir. 2016) (Stranch, J., concurring).

not deterred - also lacks merit. *See Bell*, 308 F.3d at 606 ("[T]here is no requirement that the plaintiff show actual deterrence"). Finding Troute's arguments regarding this claim to be without merit, his motion for summary judgment on this retaliation claim should be denied.

### 2. September 28, 2015

Plaintiff's second and final claim of retaliation against Troute stems from events that allegedly occurred on September 28, 2015. *See* doc. 52 at PageID 277. On that date, Plaintiff left his dorm at 7:35 a.m. with a 16-ounce coffee after having already consumed a cup of water. *Id*. According to Plaintiff, the dorm is closed for cleaning each weekday morning until 9:00 a.m. and, by the time the dorm was to reopen at 9:00 a.m. that day, he had an urgent need to use the restroom. *Id*.

When Plaintiff arrived at the dorm at 9:15 a.m., it was still closed. *Id*. at PageID 278. Plaintiff asked Troute if he could use the restroom located in the dorm. *Id*. When Troute refused and told Plaintiff to use another restroom, Plaintiff asked Troute for a grievance form so that he could report Troute for denying him access to the dorm restroom. *Id*. According to Plaintiff, Troute stood up and stated, "son of a b*tch, I'm tired of you f*cking writing me up and threatening to write me up!" *Id*. at 278. Plaintiff testifies about Troute's statement in this regard in an affidavit, as well. Doc. 143-1 at PageID 1415. Troute allegedly then cuffed Plaintiff and restrained him. *Id*. According to Plaintiff, while restrained by Troute and another officer, his bladder gave out and he urinated on his clothes and the surrounding floor. *Id*. at PageID 278-79. Plaintiff alleges that Troute's conduct in cuffing and restraining him until he urinated on himself, as well as the subsequent filing of a disciplinary infraction report against Plaintiff, was in retaliation for engaging in protected conduct; namely, requesting a grievance form to complain about being denied use of the dorm restroom.

While the undersigned might be inclined to consider whether a complaint about being temporarily denied the use of a restroom would be frivolous and, thus, not protected conduct under the First Amendment, Troute makes no argument in this regard. *See* doc. 163 at PageID 1541. Instead, Troute argues only that, "[t]here is no evidence to show that this conduct report and [use of force] report was false or any way related to Plaintiff's use of the grievance system." *Id.*

There is, however, evidence supporting a causal connection between Troute's allegedly retaliatory conduct and Plaintiff's threat to file a grievance, *i.e.*, temporal proximity between the threat and Troute's conduct, as well as Troute's statement that he was "tired of [Plaintiff] f*cking writing [him] up and threatening to write [him] up!" *See* doc. 143-1 at PageID 1415. Accordingly, Troute's sole argument on this claim is without merit and, therefore, summary judgment on should be denied in this regard.

### C. Qualified Immunity

Finally, both Defendants Troute and Farrar argue that they are entitled to qualified immunity on any underlying First Amendment violations. However, Defendants make no attempt to provide a developed argument in this regard and state, in conclusory fashion without citation to any authority in support, that "[t]o the extent that this Court rules that Plaintiff's constitutional rights were violated, Plaintiff still cannot show that he had a clearly-established right not to be disciplined in the manners described above." Doc. 163 at PageID 1543. Absent any legitimate attempt at argument, the undersigned finds Defendants' qualified immunity arguments waived for purposes of summary judgment. *Cf. Evans v. Vinson*, 427 F. App'x 437, 447 (6th Cir. 2011); *see also McPherson v. Kelsey*, 125 F.3d 989, 995–96 (6th Cir. 1997) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in the most skeletal way, leaving the court to . . . put flesh on its bones").

## III.

Based on the foregoing, the undersigned **RECOMMENDS** that Defendants' second motion for summary judgment be: (1) **GRANTED IN PART** with regard to: (1) the claim that Farrar retaliated against Plaintiff in October 2014 by writing a conduct report against Plaintiff after Plaintiff complained of Farrar's use of foul language; and (2) the claim that Farrar tossed Plaintiff's bunk on January 16, 2015 in retaliation for complaining about air quality and ventilation in the dorm; and (2) **DENIED** with regard to all other First Amendment retaliation claims against Farrar and Troute.

Date:  April 17, 2020              s/ Michael J. Newman
                                   Michael J. Newman
                                   United States Magistrate Judge

## **NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within **FOURTEEN** days after being served with this Report and Recommendation.  This period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system.  If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).  Parties may seek an extension of the deadline to file objections by filing a motion for extension, which the Court may grant upon a showing of good cause.

Any objections filed shall specify the portions of the Report and Recommendation objected to, and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendation is based, in whole or in part, upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.

A party may respond to another party's objections within **FOURTEEN** days after being served with a copy thereof.  As noted above, this period is not extended by virtue of Fed. R. Civ. P. 6(d) if served on you by electronic means, such as via the Court's CM/ECF filing system.  If, however, this Report and Recommendation was served upon you by mail, this deadline is extended to **SEVENTEEN DAYS** by application of Fed. R. Civ. P. 6(d).

Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140, 153-55 (1985); *United States v. Walters*, 638 F.2d 947, 949-50 (6th Cir. 1981).